THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TED OLDJA,<br><br>Plaintiff,<br><br>v.<br><br>WARM BEACH CHRISTIAN CAMPS<br>AND CONFERENCE CENTER,<br><br>Defendant. | CASE NO. C09-0122-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's motion for summary judgment (Dkt. No. 49), Plaintiff's response (Dkt. No. 53), and Defendant's reply. (Dkt. No. 59.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

## I. BACKGROUND

In the summer of 2007, Ted Oldja attended a camp at Warm Beach Christian Camp ("Warm Beach") in Stanwood, Washington. Mr. and Mrs. Oldja decided to ride on the zip line operated by Warm Beach. The zip line carried riders in a harness suspended from a cable by two ropes: a white rope, which acts as the primary connection between the harness and the cable, and bears the load of the rider's weight; and a black rope, which acts as a secondary connection between the harness and the cable, and can be used as a safety line to slow the rider down.

Before a user rides the zip line, it is the job of the launch facilitator to follow a safety

procedure. First, the facilitator tells the rider that they can hold on to either the white and black ropes during the ride, or just the white rope. The facilitator instructs riders not to hold only the black secondary line, because it will slow them down or stop them completely. The facilitator then double-checks the harness configuration, pulley attachments, safety helmet, and carabiners. The launch facilitator calls "zip clear" to the landing facilitator to communicate that the rider is ready, and the landing facilitator responds "zip clear" to communicate that the path is clear for the rider.

After watching his wife on the ride, it was Mr. Oldja's turn. The launch facilitator, Paul Matthewson, testified that he followed the proper safety procedures. (Dkt. No. 49 Ex. 2 at 51–53.) Matthewson testified that he did not see Oldja wrap his fingers in the white primary rope, and that Oldja's fingers were not wrapped in the rope when Matthewson cleared him to go. (Id. at 60.) Some time after Matthewson called "zip clear," Mr. Oldja, a mechanical engineer, wrapped his fingers in the white primary rope, and stepped off the platform. The load-bearing rope tightened around his hand and crushed his fingers. Mr. Oldja was rushed to a hospital and has had several surgeries on his hand. Plaintiff filed suit against Warm Beach for negligence, product liability, and negligence per se under a variety of theories. Defendant now moves for summary judgment dismissal of all three of these claims. Plaintiff does not oppose summary judgment on the product liability claim.

## II.  APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) mandates that a motion for summary judgment be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There exists a genuine issue as to a particular fact—and hence that fact "can be resolved only by a finder of fact" at trial—when "[it] may reasonably be resolved in favor of either party"; conversely, there exists no genuine issue when reasonable minds could not differ as to the import of the evidence. Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 250–52 (1986). Whether a particular fact is material, in turn, is determined by the substantive law of the case: "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. Summary judgment, then, demands an inquiry into "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"; if applying the relevant law to those facts about which no two reasonable factfinders could disagree dictates that the moving party must prevail, then a motion for summary judgment must be granted. Id. at 250–52.

## III. DISCUSSION

### A. Duty of Ordinary Care

Plaintiff argues that it is well established that every business has a duty to use ordinary care in keeping its premises reasonably safe for use by business invitees. (Dkt. No. 53 at 10.) Defendant argues that Section 388 of the Second Restatement of Torts should govern the analysis. The Court addresses Section 388 below, but Section 388 governs only the duty to disclose and does not govern the duty of ordinary care. Defendant has not shown an absence of a genuine issue of material fact with respect to its alleged breach of the duty of ordinary care. Accordingly, summary judgment dismissal of this claim is denied.

### B. Duty to Disclose

With reference to a duty to disclose, The Supreme Court of Washington has adopted Section 388 of the Second Restatement of Torts, which states that the supplier is liable if he:

a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Fleming v. Stoddard Wendle Motor Co.*, 423 P.2d 926, 928 (Wash. 1967).

Plaintiff argues that he is choosing not to pursue his claims under Section 388. Rather, Plaintiff argues that the Court should consider Section 343A, which creates a duty to protect invitees from known or obvious dangers when the landowner should anticipate the harm despite such knowledge and obviousness.

Plaintiff is misguided. He may choose the claims he brings, but he cannot choose the standard the Court will apply to those claims. Section 343 governs liability for an activity or condition on the land. Section 388 governs liability for use of a chattel. "Chattel" means movable or transferable property. *Black's Law Dictionary* (9th ed. 2009). Defendant argues that the zip line is movable property, and Plaintiff does not challenge this characterization. The Court agrees. Plaintiff's injury was caused by equipment on the land, not the land itself. Accordingly, Section 388 governs Plaintiff's claims. *Lunt v. Mt. Spokane Skiing Corp.*, 814 P.2d 1189, 1192 (Wash. Ct. App. 1991) (where injury arises from equipment not land, Section 388 not Section 343 governs).

Each of the three criteria in Section 388 must be satisfied. The Court will begin with consideration of the second criterion. To prevail on this element at the summary judgment phase, Plaintiff must show some evidence that Defendant had no reason to believe that riders of the zip line would realize the dangerous condition. This is a dense piece of legal language, so an illustration is helpful.

In *Fleming v. Stoddard Wendle Motor Co.*, 423 P.2d 926 (Wash. 1967), a man disabled a safety feature on a truck that was designed to prevent the motor from starting if the car was in gear. He sold the truck to a mechanic and did not disclose that the safety feature had been disabled. When the purchaser started the truck, it lurched forward, striking and injuring the

plaintiff. The Supreme Court of Washington noted that the man who had sold the car had no reason to believe that any future operator of the car would know that the safety feature had been disabled. *Id.* at 928. Because the seller had no reason to believe the defect would be discovered, he had a duty to warn of that defect. The defect was latent and no amount of common sense or automotive knowledge could inform a driver about that particular hazard. Dismissal of the seller was reversed.

In contrast, *Mele v. Turner*, 720 P.2d 787 (Wash. 1986) concerns a case where a young man borrowed a lawn mower from his neighbors, inserted his hand into the mower housing to clean out some wet grass, and injured four fingers. The young man admitted in an affidavit: "I obviously realized that one should not put his hand under the machine where the blade runs . . . ." *Id.* at 790. The Court held that because the dangerous condition was obvious and known, defendants had no legal duty to warn. *Id.* There was nothing latent about the defect, and common sense would inform the user of the hazard.

The present case is much closer to *Mele* than *Fleming*. Plaintiff's injury was the natural result of wrapping a rope around one's hand and then suspending one's body from that rope. This was not a latent or hidden condition that only Defendant could know. Common sense of a capable adult is sufficient to inform a rider of this danger. Plaintiff admitted as much in his deposition:

> Q. Did you know that if you wrapped the rope around your fingers and then you put weight on the rope, that that would tighten and cinch around your fingers?
> A. The thought did not cross my mind.
> Q. Okay. You didn't think about that correct?
> A. Correct.
> Q. But if you had thought about it, you would have been able to figure that out, correct?
> A. If someone asked me?
> Q. Yes.
> A. Yes.

(Dkt. No. 50 at Ex. A 196:14–197:1.) Given Plaintiff's admission that he would have realized the danger if he had thought about it, Plaintiff cannot credibly argue that Defendant had no reason to

believe that he would realize the danger.

The only evidence Plaintiff offers on this point is the testimony of Dr. Richard Gill, a Human Factors Engineering consultant. Dr. Gill was disclosed as a rebuttal expert, and testified that the scope of his work was to provide rebuttal testimony to the three defense experts. (Dkt. No. 60 at Ex. 1, Ex 2 16:8–9.) Dr. Gill's expert report provides a series of conclusions about the behavior of zip line riders that does not rebut any of the testimony of Defendant's experts. Rather, this type of testimony should have been disclosed in the initial expert discovery responses and is therefore untimely. Accordingly, Dr. Gill's testimony regarding the behavioral tendencies of zip line or challenge course participants is STRICKEN. Plaintiff has failed to demonstrate a genuine issue of material fact with respect to Defendant's liability under Section 388.

**C. Liability for violation of state regulations**

Plaintiff's next argument is that Defendant was negligent pursuant to RCW 5.40.050 for violation of a state statute. WAC 296-403A-190 states that amusement rides must be inspected by certified inspectors. RCW 67.42.010 and WAC 296-403A-100(2) provide the definition of amusement rides, but do not mention zip lines. Plaintiff argues that these definitions do include zip lines, and relies on a series of communications with the State of Washington Department of Labor and Industries ("L&I") in 2009 and 2010 in support of this contention. (Dkt. No. 50 at Ex. 11.)

The Court interprets these communications very differently from Plaintiff. It is clear from these emails that the decision to include zip lines in the definition of "amusement ride" under WAC 296-403A-100(2) was not made until late 2009 or early 2010, more than two years after Plaintiff injured his hand on Defendant's zip line. (Dkt. No. 50 at Ex. 11.) Plaintiff does not address this chronology in his briefing. It is misleading in the extreme for Plaintiff to characterize Defendant's zip line as "unlicensed" when the licensing body had not yet decided that a license was required. Plaintiff has failed to show a genuine issue of material fact with

respect to Defendant's failure to comply with licensing requirements.

### D. Common Carrier Liability

Plaintiff's third argument is that Defendant is subject to common carrier liability. Under Washington law, the duty of a common carrier to safeguard passengers from injury requires the carrier to exercise the highest degree of care consistent with the practical operation of its business or its type of transportation. *Benjamin v. Seattle*, 447 P.2d 172 (1968). Plaintiff acknowledges that there is no Washington caselaw addressing the issue of whether a zip line qualifies as a "common carrier," but argues that this Court should expand the definition to include zip lines and similar amusement rides. In support of this argument, Plaintiff mentions a series of California decisions holding that a higher standard of care applies to amusement rides. *Gomez v. Superior Court*, 113 P.3d 41, 47 (Cal. 2005) (holding that the same high standard of care applied to carriers of passengers should also apply to operators of roller coasters); *Neubauer v. Disneyland*, 875 F. Supp. 672, 673 (C.D. Cal. 1995) (holding that under California's broad common carrier statute, a Disneyland amusement ride may be a common carrier).

This argument stumbles into the yawning gap between the Washington and California common-carrier statutes. California's common carrier statute is broad: Every one who offers to the public to carry persons, property, or messages, excepting only telegraphic messages, is a common carrier of whatever he thus offers to carry. Cal Civ Code § 2168. Washington's common carrier statute is narrow and exhaustive:

> "Common carrier" includes all railroads, railroad companies, street railroads, street railroad companies, commercial ferries, motor freight carriers, auto transportation companies, charter party carriers and excursion service carriers, private nonprofit transportation providers, solid waste collection companies, household goods carriers, hazardous liquid pipeline companies, and every corporation, company, association, joint stock association, partnership, and person, their lessees, trustees, or receivers appointed by any court whatsoever, and every city or town, owning, operating, managing, or controlling any such agency for public use in the conveyance of persons or property for hire within this state.

RCW 81.04.010(11). Plaintiff offers no argument or evidence for the proposition that this definition includes a zip line. Again, Plaintiff has failed to show a genuine issue of material fact with respect to Defendant's liability as an alleged common carrier.

**IV.     CONCLUSION**

Defendant's motion for Summary Judgment (Dkt. No. 49) is GRANTED in part and DENIED in part. Plaintiff's claims for breach of the duty of ordinary care survive summary judgment. Plaintiff's claims for breach of the duty to disclose, claims relating to the violation of the WAC, and claims relating to common carrier liability are DISMISSED.

DATED this 24th day of June 2011.

/s/ John C. Coughenour

John C. Coughenour
UNITED STATES DISTRICT JUDGE